WALES *against* WEBB.

Where an instrument contaminated with usury, is taken up, and a new one substituted, by the parties, to secure to the creditor the original debt, the substituted, as well as the original security, is usurious and void.

And it makes no difference whether the party, in whose name the substituted security is given, was privy to, or ignorant of, the original corrupt agreement.

But the borrower of money on an usurious consideration, may waive the benefit of the statute, by making payment; and if he pay the usurious debt to a third person, a new security, given, by such third person, in consideration thereof, will, in the absence of any contrivance to evade the statute, be valid.

Therefore, where *A.* took the promissory note of *B.*, on an usurious consideration, and afterwards, in pursuance of an agreement between them, *B.* substituted the bond of *C.*, procured from *C.* in consideration of *B*'s promising to pay him the amount thereof, which *B.* in fact paid; it was held, that this transaction amounted to a voluntary waiver of the statute, by *B.*, and that such bond, executed on a new consideration, and with no design in any one to evade the statute, was valid.

This was an action on a bond, executed by the defendant, on the 20th of *January,* 1817, for 369 dollars, payable to the plaintiff and *Sarah Wales,* since deceased; tried at *Brooklyn, January* term, 1823, before *Brainard, J.*

On the 26th of *November,* 1812, *Samuel Webb* agreed with the plaintiff, *Sally Wales,* and *Sarah Wales,* for a loan of 250 dollars; and for the loan and forbearance thereof, he agreed to pay them three dollars *per* month. He also agreed to deliver them a note, signed by himself and *Nathaniel Webb,* for said sum and the interest. These stipulations were complied with; and the interest paid, at the rate agreed on, for one year and ten months. On the 20th of *January,* 1817, the parties to this agreement made a settlement; and it was then agreed between them, that further time of payment should be given, and that *Samuel Webb* should procure the bond of the defendant for the balance justly due on the note, and for the

further sum of 36 dollars, part of the interest claimed to be due in pursuance of said usurious agreement; which was accordingly done. The defendant was not party or privy to the preceding transactions, but executed the bond, in consideration of *Samuel Webb's* promising to pay him the amount thereof; which promise was afterwards performed. On these facts the judge instructed the jury, that the plaintiff was entitled to a verdict; and they returned a verdict for him accordingly. The defendant moved for a new trial.

*Goddard* and *Fitch*, in support of the motion, contended, That the bond in suit was a substituted security for a debt created by an usurious contract, and, as such, was void. The case shews decisively, that the original contract with *Samuel Webb* was usurious; and this will not be controverted. It is equally clear, that a new security given for a usurious debt, or substituted for an usurious security, if between the same parties, is usurious. The question, then, is narrowed to this point— whether the substitution of a security in the name of a third person, ignorant of the usury, takes out the contamination. It is to be kept in mind, that the agreement for the substituted security was made with *Samuel Webb*, the original borrower of the money, in consideration of further time of payment being given, and that the new security included usurious interest. "Here was the same usurer, and the same usury." *Botsford* v. *Sanford,* 2 *Conn. Rep.* 276. 280. That the mere fact, that the security thus agreed to be substituted, is in the name of a third person unacquainted with the previous transactions of the parties, makes uo difference as to the question of usury, is evident *ex natura rei,* and is established by authorities. If the reverse of this proposition were true, the statute might be easily rendered inoperative. All that would be necessary for this purpose, would be, for the usurer, after a loan upon a corrupt agreement, to require the security of a third person ignorant of the usury, and to indemnify him for giving such security. It is as well settled as decided cases can make it, that it is not necessary to render a security usurious, that the person in whose name it is, should have been a party to the usurious agreement. *Fields* & al. v. *Gorham,* 4 *Day* 251. *Ackland* v. *Pearce,* 2 *Campb.* 599. *Bridge* & al. v. *Hubbard,* 15 *Mass. Rep.* 96.

*S. Perkins* and *D. Young,* contra, insisted, that the bond in suit was not usurious. *Samuel Webb* had a right, if he thought proper, to waive the defence of usury to the original note, and

*Wales
v.
Webb.*

pay the amount due on it according to contract. He was willing to do this. Instead, however, of paying the money directly to the plaintiff, he procured the bond of his friend, for the amount, and promised to pay, and afterwards did pay the money to that friend. His procurement of this bond under these circumstances was equivalent to paying the money. The consideration moving the defendant to execute the bond, was *Samuel Webb's* promise to him, and not the previous usurious agreement between *Samuel Webb* and the plaintiff. This is no otherwise an evasion of the statute, than the voluntary payment of an usurious debt, always is. They cited *Scott* v. *Lewis*, 2 *Conn. Rep.* 132. *Botsford* v. *Sanford*, 2 *Conn. Rep.* 276. 2nd point. *Turner* v. *Hulme*, 4 *Esp. Rep.* 11. *Bearce* v. *Barstow*, 9 *Mass. Rep.* 45. *Chadbourn* v. *Watts*, 10 *Mass. Rep.* 121. *Green* v. *Kemp*, 13 *Mass. Rep.* 515. *Tenant* v. *Elliot*, 1 *Bos. & Pull.* 3.

HOSMER, Ch. J. *Samuel Webb* made to the plaintiff and *Sarah Wales*, deceased, a promissory note, on an usurious consideration. The defendant, entirely unacquainted with the illegal transaction, on the request of the said *Samuel*, executed to the plaintiff, the bond in suit, in satisfaction of the preceding note, on his promise to pay the defendant the amount thereof, which payment he afterwards made, pursuant to the said promise. Whether the above bond is usurious, is the question presented for the determination of the Court.

If the contract was made on an usurious consideration, the ignorance of this illegality, by the party to the security, will not avail to validate the transaction. The enquiry is, whether there be usury, and not whether the defendant had knowledge of the usury. *Ackland* v. *Pearce*, 2 *Campb.* 599. *Fields* & al. v. *Gorham*, 4 *Day* 251.

Where an instrument contaminated with usury, is taken up, and a new one substituted, by the parties, to secure the creditor the original loan; the substituted, as well as the original security, is usurious and void. *Tate* v. *Wellings*, 3 *Term Rep.* 537. *Cuthbert* v. *Haley*, 8 *Term Rep.* 390. *Botsford* v. *Sanford*, 2 *Conn. Rep.* 276. *Fields* & al. v. *Gorham*, 4 *Day* 251. *Bridge* & al. v. *Hubbard*, 15 *Mass. Rep.* 96. An usurer cannot evade the law, by the giving up an usurious security, and merely substituting another in its place.

The borrower of money on usurious consideration, may, at his option, avoid the security made by him, or waive the bene-

fit of the law, by making payment. Hence, it may be considered an established principle, that whenever a man, whether the surety or a stranger, receives the amount of the usurious note, from the debtor, and in consideration of this, gives a new note to the creditor, that the usury is purged, and the new note is valid, unless such an arrangement was made with an intent to defeat and defraud the statute. *Cuthbert* v. *Haley*, 3 *Term Rep.* 390. *Botsford* v. *Sanford*, 2 *Conn. Rep.* 276. *Scott* v. *Lewis*, 2 *Conn. Rep.* 132. On the same principle, it has been determined, that money paid by an insurer to a broker, on an illegal insurance, to be paid to the insured, may be recovered out of his hands, by the latter, in an action for money had and received. *Tenant* v. *Elliott*, 1 *Bos. & Pull.* 3.

The sole enquiry is, whether the case before us is governed by the principle last stated. There is no ground for the assertion, that the bond was executed with an intention to defeat or evade the statute; but the transaction, in my judgment, amounts to a voluntary waiver of the law, by the original debtor, by a contract on a new consideration. Had he paid the amount of the note to the defendant, who then had executed to the plaintiff his bond, a question on this subject could not have existed. If, instead of this, he had procured the defendant to give the bond in question, and had made the note to him for the precise amount, not to indemnify him, or on any condition, but containing a promise absolutely to pay him the sum specified in his bond, this case would not be essentially distinguishable from the former. In my opinion, this virtually is the precise case before the Court. The original debtor, obviously intending to waive the usury, procured the defendant, ignorant that any illegality existed, to give his bond to the plaintiff, for the amount of the note. As an inducement to this, he promised to pay him the sum secured by the bond, and has since made payment. The defendant, with the money in his hands, is now endeavouring to frustrate the plaintiff's action, in a case, in which he has no interest; for success on his part, would leave him accountable for the same amount to *Samuel Webb*. This is not like the case of *Fields* & al. v. *Gorham*. The promise, in that case, *was to indemnify*, and the note being contaminated with usury, and irrecoverable, the party defendant could not be damnified ; of consequence, he could maintain no suit against his surety. But here is a *promise to pay* ; and the waiver of the usury is equally demonstrated, by a contract on a new consideration, as if the

amount of the note had been paid to the defendant, previous to the execution of the bond.

PETERS, CHAPMAN and BRAINARD, Js. were of the same opinion.

BRISTOL, J.   The present plaintiff and *Sarah Wales* lent 250 dollars to *Samuel Webb*, upon an usurious contract; the usurious interest was paid; and finally, *Samuel Webb* having been arrested for non-payment of the principal, agreed to procure *Horatio Webb* to give *his* security to *Sarah* and *Sally Wales* for the amount due them, upon his *promise* to pay *Horatio Webb* the amount for which he had become responsible.

Is the security of *Horatio Webb*, the defendant, void, on the ground of usury ?

If it is not, the facility with which the statute of usury may be evaded, cannot fail to alarm every one, who believes that statute to be a useful law, or that it ought to be executed, whether useful or not, until repealed by the legislature.   If the present decision is good law, the statute had better be repealed at once, by the legislature.   Indeed, it is already repealed, by the court ; for the way to evade it, is so obvious, that the " way-faring man, though a fool, need not err therein."   The usurer will feel no apprehension of detection : he need only tell the borrower, " I cannot take *your* note, though I will lend you the money.   Apply to your friend ; give him *your* note, and let him give me *his*, for the same amount ; for the courts have decided, that this subterfuge, however weak it may appear to you, will effectually screen me from the operation of the statute.   Nay, you need not be at the trouble of giving a note to your friend ; for a *parol* promise to pay him the amount of the note which he gives me, will answer the same purpose.

All will admit, that *"substituted securities"* made to secure a loan of money originally usurious, are as void as those for which they are substituted.   This, as a general proposition, will not be denied ; and it would be useless to cite authorities for a position which is conceded.

These substituted securities, I will remark, are not void as a contrivance to evade the statute, though not within the letter of it ; as in the case of usurious loans, covered under the appearance of selling goods, as disguised in the form of a wager ; but are directly within the provisions of the statute, as being securities for money lent upon usury ; and consequently, it is the duty of the court to pronounce the security *void* ; for it is only

in cases, where the transaction for the purpose of evading the statute, assumes a shape distinct from the *loan of money*, that it is proper for a jury to determine, whether it is a shift to evade the statute.

Whether the usurious loan is made *to the party* giving the security, or another person, is immaterial, provided the security is in reality given for the *usurious loan;* and whether a note to secure an usurious loan is given by the borrower, or a third person; in either case. the security is void, by the direct terms, as well as spirit, of the statute.

In the case of *Fields & French* v. *Gorham*, 4 *Day* 250. where the defendant was neither party nor privy to the usurious agreement, Judge *Smith* thought it necessary, to vitiate the note, that the defendant should be a *party* to the *usurious contract;* but as he perceived this would lead to evasions of the statute, he declared that he would presume *Richard Gorham*, who borrowed the money upon usury, to be the agent of *Miles Gorham*, the defendant, who furnished the security.—Now, this was certainly an ingenious expedient to deliver himself from the consequences of what he afterwards admitted, was an erroneous principle. Having assumed the position, that to render the security void on the ground of usury, the defendant must be a party to the *usurious contract*, he avoided the pernicious consequences likely to ensue, by the presumption of an agency, which had no existence in reality; for *Richard Gorham*, who made the usurious loan, was in reality the principal, who borrowed the money, and procured the note of *Miles Gorham* to secure it; instead of being the agent of the defendant, borrowing the money on his account.

The mind of this acute reasoner, which was seldom embarrassed, by the dexterous ingenuity of an adversary, could not long be entangled in a web of its own creation : and we accordingly find, in the case of *K. & E. Townsend* v. *Bush*, 1 *Conn. Rep*. 269. where neither of the parties on record were parties to the usury, that he retracted the opinion in question, as wholly unnecessary to the due execution of the statute against usury. In the case of *Fields* & al. v. *Gorham*, says this great judge, " I thought it necessary to *presume an agency*, by which the *parties* to the *corrupt agreement*, might be supposed to act for the parties on the record. But on attending further to the expressions of the statute, I find them to apply rather to the *contract*, than the parties ; and the only fact made necessary to avoid the contract, is, that it be made for the payment of any principal, or

*Windham,*
*July,*
*1823.*

*Wales*
*v.*
*Webb.*

money lent upon, or for usury, whereupon or whereby there shall be reserved or taken more than at the rate of six dollars in the hundred."

These remarks are designed to shew, and if I am not deceived effectually do shew, that the case under consideration falls directly within the comprehensive language of the statute; that, of course, the question *whether it was a shift to avoid the statute* did not arise; and that the security in question is equally void, whether the defendant was or was not a party to the usury; it being made to secure an usurious loan of money, and that directly to the usurer.

It is said, here was a new consideration, to wit, the promise of *Samuel Webb* to pay the defendant the same amount, which he agreed to pay the plaintiff; and it is principally on this ground, that a majority of the court hold that the plaintiff can recover. That *Samuel Webb* has since paid the amount to the defendant, can make no difference : for if the present bond was void in its inception, on account of usury, it cannot be purged of its corruption, by any thing subsequent to its execution and delivery.

If, by a *new consideration* is meant *that* which exists between principal and surety, and is the foundation for the contract of indemnity in favour of the former, I deny that such new consideration will have any influence to legalize the contract between the lender and borrower. In every case where a surety secures an usurious loan of money to the lender, there is a fair contract founded on good consideration, that the borrower will indemnify the surety against loss. If the surety has paid the money, ignorant of the usury, though voluntarily and without suit, his right to reimbursement, would be clear; but if he was informed of the usury, and should voluntarily pay the money, though requested to controvert it, his right to reimbursement would be forfeited in consequence of his own misconduct. But who will pretend, that because the surety can recover an indemnity, if compelled to pay a usurious loan of money, out of the borrower, that this legalizes the contract of usury, or puts the usurer in any better situation than he would have been, had there been no surety in the case? If such is the law, the statute of usury would be repealed, and this by means not disagreeable to the lender; that is to say, by compelling the borrower to obtain surety for the repayment of the loan.

Such, therefore, is not the *new consideration*, which will take a case out of the statute. On the contrary, to take a case out

of the statute, I apprehend *the same consideration* must either actually, or in contemplation of law, proceed from the party who *receives* the new security; and that the new security must be given for such *new consideration*, and not for the original corrupt loan, though the securities for that loan may, at the same time, be given up. In such case, the new security is not a substituted security for the original corrupt loan, but a security founded on a new and valid consideration, distinct from the usurious contract.

An examination of the cases will shew, that the above principle, to wit, that the new consideration must proceed, either directly, or in contemplation of law, from the party who receives the new security, is correct. The cases founded on a new consideration are the following.

1. Where a usurious security is in the hands of a *bona fide* purchaser, without notice of the usury, and the debtor gives a new security to the holder, the contract is good. *Cuthbert* v. *Haley*, 8 *Term Rep.* 390.

2. In the case of *Church* v. *Tomlinson*, 2 *Conn. Rep.* 134. n. where *Tomlinson* had received distribution, as one of the heirs of *Jabez Bacon*, a usurious note against *Church*, who consented to take up the old note, and give a new one to *Tomlinson*, the *new security was* holden good; though *Tomlinson* was acquainted with the usury. The principle involved in this case, is denied, by a recent case, *Chapman* v. *Black*, 2 *Barnw. & Ald.* 589. where it was decided, that a substituted security, given by a third person, neither party to the usurious loan, nor to the original security for that loan, given to a *bona fide* purchaser of the usurious security, was void; because such purchaser, though ignorant of the usury, when he purchased the security, had been *informed* of it, before he took the new note. I have no disposition, however, to dispute the authority of *Church* v. *Tomlinson*, for the purposes of the present argument.

3. Where the debtor in an usurious security honestly pays the debt to a third person, and that person gives a new security even to the lender himself, such new security is good. *Scott* v. *Lewis*, 2 *Conn. Rep.* 132. *Bottsford* v. *Sanford*, 2 *Conn. Rep.* 276. *Bearce* v. *Barstow*, 9 *Mass. Rep.* 45.

All these cases support the position, that the new consideration must proceed, either in reality, or in contemplation of law, from the party who takes the new security. That this was the case in *Cuthbert* v. *Haley*, and *Church* v. *Tomlinson*, will not be denied. In *Cuthbert* v. *Haley*, the plaintiff had received cer-

tain usurious securities against the defendant, which could not be enforced. But he had paid for them a full and valuable consideration, ignorant of the corrupt contract, which destroyed their value in his hands. Upon every sound principle of law and justice, he was intitled to recover back the money he had paid of the person *from whom* he received them. So, in the case of *Church* v. *Tomlinson,* had *Church* refused to pay the original notes and avoided them for usury, *Tomlinson* would have resorted to the estate of *Jabez Bacon,* and been redressed for the injury which he sustained. But, by delivering up the old securities, on a new contract, *Cuthbert,* in one case, and *Tomlinson,* in the other, were prevented from resorting to the persons of whom they had received the usurious securities for redress; and it was the giving up this right of redress, a consideration proceeding from the party *who took the new security,* and distinct from the corrupt loan, that gave validity to the new contract. It was not a *substituted security,* made to secure a loan of money originally usurious.

In the cases of *Scott* v. *Lewis* and *Bottsford* v. *Sanford,* the borrowers of the money had paid the full amount to the sureties, to enable them to pay the debt; waiving any advantage from the statute. Now, this was money received by the sureties, for the use of the lender. The lender had good right to the money, which the sureties had received, nor could the demand have been resisted, on the ground of illegality in the original contract. For if *A.* pays money to *B.* to pay over to *C.,* though *C.* could not have enforced his demand, had *A.* pleaded usury, yet *B.* has no right to substitute his own will for the conscience of *A.,* and so keep the money to himself. The case of *Tenant* v. *Elliot,* 1 *Bos. & Pull.* 3. is direct to this point. The defendant, a broker, having effected an illegal policy of insurance in behalf of the plaintiff, and a loss having been sustained, the underwriters honestly paid the money to the defendant, who chose to keep it; and in a suit against him for this money, brought by the owner, it was decided, that *he* could not insist upon the illegality. In the case of *Scott* v. *Lewis,* had the defendant, after he received the money from *Sherman,* paid it over to *Scott,* in satisfaction of his debt, and *Scott* had then lent *Lewis* the same money, and taken his note for the amount, at lawful interest, no one would think of questioning the validity of the note. The new security of *Lewis* would not be a substituted security, within the meaning of that expression, as applicable to the law of usury, nor given to assure a usurious loan of money; but, on

the contrary, it would be a security for a new loan, on a new consideration, at lawful interest, and the money not contaminated, in consequence of having been received in payment for a usurious loan.

What difference exists between the case, as above supposed, and the real facts in the case of *Scott* v. *Lewis* ?

All the difference in the cases, is, in the *form* of doing the business.    The money was not counted out, or received into the actual possession of *Scott ;* but being willing that *Lewis* should keep it, a certain time, for lawful interest, he consents to receive his note for the amount.    It was in substance a new loan of *Scott's* money to *Lewis,* as much as if the useless ceremony of counting and recounting the money had been gone through. The *new consideration,* therefore, in the case of *Scott* v. *Lewis,* proceeded, at least in contemplation of law, from *Scott ;* the money was mutually considered as paid to *Scott,* and reloaned to *Lewis :* it has no analogy to the case of substituted securities. Nor is there any danger of evading the statute, in cases like that ; for the borrower ought to be at *liberty* to pay the money, if he chooses; nor ought *his* honest intentions to be thwarted, by the dishonesty of an agent, employed to carry them into effect.

It is said, the promise of *Samuel Webb,* to pay the defendant, the amount for which he became responsible to the plaintiff, is valid ; and it is asked, shall the defendant be permitted to get the money, and withhold it from the plaintiff? The answer to this consideration, is, to my mind, conclusive.

To *assume* the fact, that the promise of *Samuel Webb* to pay the defendant is valid, is begging the question in dispute between the parties; for this agreement cannot be valid, without a good consideration for the promise.    Now, the consideration for *Samuel Webb's* promise to the defendant, was the supposed liability which the defendant had incurred to the plaintiff, on account of *Samuel Webb ;* but if the security given to the plaintiff is void on account of usury, and the defendant not liable to the plaintiff for the debt, then *Samuel Webb's* promise to the defendant fails, for want of an adequate consideration to support it.    To take for granted, therefore, that *Samuel Webb's* promise to pay the defendant the amount which the latter became holden for to the plaintiff is good, is taking for granted that which is the very point in dispute.    This promise cannot be supposed, if the security now in suit is usurious.    At most, there could be no consideration for any other promise than one

*Windham,*
*July,*
*1823.*

*Wales*
*v.*
*Webb.*

of indemnity to the surety, provided the reasoning heretofore adopted is correct; and it is exactly like every other case, where the borrower of money, instead of giving his own note, requests a friend to do it for him.

The case of *Button* v. *Downham, Cro. Eliz.* 643, shews, that an indemnity for expenses would be all that the present defendant could recover from *Samuel Webb.* It was debt on obligation, brought by the plaintiff, a surety for the defendant, who had borrowed money of one *Wolmer,* conditioned to indemnity the plaintiff against the bond, which the plaintiff had given *Walmar,* for the money borrowed. The defendant pleaded, that the obligation given to *Wolmer* by the plaintiff, was void, on account of usury in the contract. But the court decided, that "forasmuch as the condition of the bond was to save him harmless from *all suits,* which he had not done, *nor doth the defendant answer thereto, but to the obligation only,*" the plea was ill. Yet as the security to *Wolmer* was void, on account of usury, it is clear the plaintiff could recover nothing more than an indemnity for his expenses; not the amount of the usurious debt. The case of *Turner* v. *Hulme,* 4 *Esp. Rep.* 11. is not relied upon, by my brethren, as good law.

The decision at the circuit, in my opinion, was erroneous.

New trial not to be granted.