[Woodard v. Elrod.]

# Woodard *v.* Elrod.

### *Bill to Restrain Foreclosure of Mortgage.*

(Decided Jan. 22, 1908.    45 South. 647.)

1. *Appeal; Harmless Error.*—Certain depositions were suppressed and were afterwards admitted by agreement as of the same force and effect as if they had been properly taken.   Held, if improperly suppressed in the first instance, the subsequent admission cured any error.

2. *Mortgages; Foreclosure; Default.*—Although the mortgage provided that if the mortgagor should default on any of the notes secured, or transfer or remove any of the property, including the crops, mortgaged to secure the debt, from the premises, all the notes should become due at once, the fact that prior to Nov. 1st, 1905, the mortgagor sold certain cotton grown on the mortgaged premises and removed the same without the mortgagee's consent, did not entitle such mortgagee to declare all subsequently maturing notes presently due and to foreclose the mortgage, as it was the intent of the parties that the mortgage could be paid in cash, and the mortgagor had paid all the installments maturing up to and including Nov. 1st, 1905.

APPEAL from Blount Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by W. P. Elrod against William Woodard to restrain defendant's foreclosure of a certain mortgage, in which defendant filed a cross-bill for foreclosure.   Decree for complainant, and defendant appeals.   Affirmed.

THOMAS B. RUSSELL, and JAMES B. SLOAN, for appellant.   The court erred in refusing to suppress the deposition.—Sec. 727, Code 1896.   The sale by Elrod of one bale of cotton made by him on the land described in the mortgage was the happening of an event or contingency which the mortgage declared by its terms should give the mortgage the right to foreclose the same.—*Parker v. Oliver*, 106 Ala. 549; *Chambers v. Marx*, 93 Ala. 412; Pom. Eq. Jur. Sec. 439.   The payment of the $50 made after the whole mortgage debt was due would operate

[Woodard v. Elrod.]

only to destroy the debt pro tanto.—*Chambers v. Marx, supra.*

GEORGE W. DARDEN, for appellee. The case at bar is identical with the case of *Bolman v. Lohman,* 79 Ala. and on the authority of that case the chancellor's judgment should be affirmed. The cross-bill having been amended so as to require an answer, the case was not at issue for any purpose until the expiration of the 30 days, for answer, and the court properly refused to suppress the depositions taken in the manner described in the record.—Secs. 706-708, Code 1896.

HARALSON, J.—The first assignment of error is, that the court erred in granting the motion of complainant in the original bill, to suppress the depositions of three witnesses named.

The court had, at a prior term, suppressed the depositions of these witnesses (William and Charley Woodard and James B. Sloan) "because the said testimony was taken before the said cause was at issue."

Afterwards, on the trial of the cause, counsel for both sides entered into a written agreement, "that said depositions or testimony may at all times hereafter be used on the trial and all other proceedings in said cause, the same as if they had been regularly and legally taken, and that complainant will be entitled to no objections to said testimony other than he would have had, if the same had been legally taken and certified."

On the submission of the cause for final decree, the defendant offered said depositions and they were received without objection, introduced in evidence and considered by the court in its final decree.

If there was any error in the suppression of these depositions, it is most obvious that this agreement, and

the use made of them under this agreement on the trial, cured the error, and it was error, if any, without injury.

The other assignment, which needs alone to be considered, is that the court erred in the decree rendered. A temporary injunction had been granted on the application of complainant, on filing his bill, against the prosecution of the suit, which injunction was made perpetual by the court, in its final decree.

The court decreed, that the defendant, Woodard, was not entitled to relief upon his cross-bill, as amended, and the cross-bill was dismissed. It was further held, that complainant, Elrod, was entitled to relief, and that the foreclosure proceedings under the power in the mortgage, instituted prior to the filing of the original bill, were premature and unauthorized by law, when instituted, and the temporary injunction granted in the case was made perpetual against defendant, his agents and attorneys, without prejudice, however, to any foreclosure proceedings by bill or under the power in said mortgage thereafter instituted, for any future default in payment or future breach of conditions, under the terms and provisions therein contained.

Complainant purchased from the defendant, William Woodard, on December 18, 1902, a tract of land (described in the bill and in the mortgage he gave to secure the purchase money), consisting of 163 acres more or less, for the sum of $300, divided into six payments of $50 each—$50 payable on the 1st of November, 1903, and $50 on the 1st of November of each year thereafter, the last note falling due 1st November, 1908, and all notes bore no interest. To secure the payment of the several notes as they respectively fell due, complainant executed to the defendant a mortgage on the real estate purchased by him, as well as on the entire crops for the years 1903, 1904, 1905, 1906, 1907, and 1908, in the county of Blount.

The mortgage contained the condition, that if the grantor, Elrod, should pay or cause to be paid, these notes at maturity, then the conveyance was to be null and void, but if the grantor should fail at the maturity of any one of the notes to pay the same in full, or if the said grantor should transfer, trade or remove any of said property, or attempt the same, then all of said notes should at once become due and payable, and, in that case, the grantor agreed to pay all costs and expenses and an attorney's fee that may be legally incurred in collecting the indebtedness or foreclosing the mortgage.

It is alleged that complainant paid each of said notes falling due on November 1, 1903, 1904, and 1905, respectively, on or before maturity, and that on or about the 19th of October, 1905, before the note of that year fell due, defendant placed said mortgage and the remaining notes, including the one of 1905, in the hands of attorneys for foreclosure and collection, and advertised the land for sale under the power in the mortgage, and refused to stay the sale of the land, unless complainant would pay the three notes falling due on November 1, 1906, 1907, and 1908.

The ground on which defendant rested his right of foreclosure, and the maturing of all the notes, as stated in his cross-bill is, that "on or about the 15th of October, 1905, the complainant sold one and one-half bales of cotton, which cotton was conveyed to defendant by the terms of said mortgage and raised upon the aforesaid lands, which cotton was sold to parties other than defendant, and complainant failed to place the proceeds of said cotton on the aforesaid mortgage indebtedness, and by reason of the violation by complainant of the aforesaid stipulations of said mortgage, by the terms thereof, the notes secured thereby became due and payable," and the mortgage foreclosed.

[Woodard v. Elrod.]

The complainant sets up in his answer to the cross-bill, "that he paid the note secured by the mortgage to defendant falling due November 1, 1905, before the same became due on November 1, 1905, on, towit, the 28th of October, 1905, and said payment of said note was accepted and the money was received by the defendant on that day, and he denies any breach of any condition in said mortgage, whereby default has accrued, such as would authorize the foreclosure under the power" in the mortgage.

It is further set up, that the alleged mortgage indebtedness was payable in money only, and the complainant had the right to convert the property into money for the purpose of paying the note, due and payable on November 1, 1905.

From the foregoing we have presented the issue in the case to be decided.

It is manifest that the intention of these parties, the one in giving and the other in receiving the mortgage, was to secure the payment of the notes as they fell due. The complainant bought the land for farming purposes; and, we apprehend that the payment of any notes before maturity, whether from the proceeds of a part of the crop or from other sources, would be sufficient to prevent the maturity of all the notes. This seems, from the undisputed evidence, to have been the construction the parties themselves placed on the contract.

The complainant was asked, "Did you dispose of any part of your crops grown on this land during the year 1903, before you paid Woodard the installment due him under the mortgage, November 1, 1903, and did Woodard know of this, and did he make any objection thereto? and he answered, he did dispose of it with Woodard's knowledge and consent and he did not make any objection, and "I paid the installment." The same question

was asked in reference to the note of 1904, and he stated, that "I did dispose of my crops during 1904, before I paid the installment, due November 1, 1904, with Woodard's knowledge, and he did not object to it. I paid the installment due under the mortgage, November 1, 1904."

The complainant testified, that three days before the note of November 1, 1905, was due, according to its face, he paid Woodard the fifty dollars. The payment was made October 28, 1905, and the note fell due November 1, 1905, and he took the money and kept it. This statement is corroborated by witness Harvey and Smith, who were present when the payment was made.

Charley Woodard, for defendant, testified to the payment of the money; that after colloquy between complainant and defendant, who was witness' father, defendant told complainant that he would take the money, but that he did not have anything to write with, and he would have to go to the house, near by, for it; that on the way to the house, defendant asked Elrod what he wanted with a receipt, and Elrod told him he must have one, when defendant told complainant he did not need a receipt, and he would not give him one, but he kept the money.

Complainant testified that he got the $50 which he paid to Woodard, October 28, 1905, out of a bale of cotton which he raised on the land he had bought from Woodard; that the cotton was sold to one Brice; that the money was paid to him by Brice, and he carried it to Woodard, who took it and kept it, and at that time, he had about 300 bushels of corn on the place and a half bale of cotton, and the corn was worth 65 cents a bushel.

The payment of this $50, on October 28th, is beyond dispute. The sale of the cotton to Brice, out of which the money came, which was paid to defendant, was not

such a removal of the cotton, as gave defendant the right to declare the notes for 1906, 1907 and 1908, due, and the mortgage foreclosable; as the payment of the money was what the mortgage was intended to secure, and the cotton was sold to pay him the 1905 note, he was in no way damaged thereby. To so hold, would be against the spirit and evident intent of the mortgage, and would work a manifest hardship and injustice to complainant. The chancellor so held, and we agree with him.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.