The plaintiffs, Jack Helms, Michael Helms, and Virginia C. Helms sought to bring a class action against defendant, First National Bank of Gadsden, N.A. The Circuit Court of Etowah County granted defendant's motion for summary judgment. The plaintiffs appeal and we affirm.
The dispositive issues are (1) whether federal or state law provides the penalty when a national bank has lent money at an alleged usurious rate of interest, (2) whether usury taints subsequent renewals of a loan transaction when no usurious interest has been paid and the renewal note calls for the payment of interest at a legal rate, (3) whether plaintiffs, who never paid any interest at the alleged usurious rate, possessed a sufficient nexus with a class of persons who had been illegally charged usurious rates of interest, and (4) whether it is sufficient to state in a foreclosure notice that the mortgaged property will be sold "during the legal hours of sale."
The record reveals the following: On March 2, 1978, defendant, a national banking association, accepted a promissory note from plaintiffs in the principal sum of $79,592.68. This note was in renewal of two previous notes and bore interest at a rate of 12% per annum. It was to be paid in a single installment which was due ninety-one days thereafter.
No payment on either principal or interest was made, and on June 1, 1978, the note was renewed. However, this renewal note called for the payment of 8% interest on the original principal. *Page 452 
This change in interest rates was apparently the result of an inquiry made by plaintiffs' attorney regarding the legality of the 12% rate. In a letter to the attorney, the bank informed him it was "forgiving" the payment of this interest, but indicated the payment of 8% interest from the date of renewal, June 1, 1978, was expected. The March 2 note was marked "paid by renewal" upon execution of the June 1 note.
The bank's security was real estate mortgages between plaintiffs and itself. After plaintiffs failed to pay the June 1 renewal note when due, defendant foreclosed on the mortgages.
Defendant ran foreclosure notices which stated, in pertinent part, that the property would be sold "during the legal hours of sale." At the resulting auction, defendant purchased the property for $75,351.65.
As a result of the above, this suit was filed by plaintiffs. They alleged the March 2 note was usurious. By amended complaint they sought to bring their action both individually and as a class action pursuant to Rule 23, ARCP. The purported class was all those persons "similarly situated which have been illegally charged interest rates exceeding applicable state and federal statutes, . . ."
Plaintiffs also attacked the foreclosure sale on two grounds. They first contended that because of the alleged usury, defendant had forfeited all right to retain or receive the principal amount of the loans. Secondly, they argued the sale was invalid due to the alleged insufficiency of the notice run by defendant in advertising the sale.
The bank moved for summary judgment and filed a supporting affidavit. The bank contended that, even if the 12% rate of interest was usurious, it had suffered the only penalty to which it was subject when it forgave and forfeited the right to this interest.
As indicated, the trial court granted the motion for summary judgment.
 I
At the outset, we note that under the relevant portions of the National Bank Act, a national bank may charge "interest at the rate allowed by the laws of the State . . where the bank is located . . . and no more. . . ." 12 U.S.C. § 85 (1970). This section has been interpreted as incorporating by reference the relevant statutory and case law of the state in which the national bank is located for purposes of ascertaining the maximum interest chargeable by that bank. First National Bankin Mena v. Nowlin, 509 F.2d 872 (8th Cir. 1975).
It is not necessary for this court to decide whether or not the interest rate of 12% charged by the bank was in fact usurious, and we do not so decide. This is so because even if the requirement of 12% interest on a single payment loan exceeds the allowable amount under Alabama law, federal law provides the penalty when a national bank is the offending party. It is well established that 12 U.S.C. § 86, is the relevant penalty statute in such a situation, for § 86, unlike § 85, does not refer to or incorporate state law. Therefore, since Congress has provided the penalty for usury, that action preempts the field, leaving no room for varying state penalties. First National Bank in Mena v. Nowlin, supra.
The only penalty provided under § 86 for knowingly charging a rate of interest greater than allowed by state law is a forfeiture of the entire interest where the interest has not been paid and a penalty of double the amount of interest if it actually has been paid. Therefore, even if defendant bank was guilty of usury, plaintiffs' demand for the return of the principal, or in the alternative, for a voiding of the sale held subsequent to default, must fail as a matter of law.
 II
Plaintiffs further contend the bank has not purged the alleged usury from the transaction through execution of the 8% renewal note. As support for this proposition, *Page 453 
plaintiffs refer us to the case of Valley Mortg. Co. v.Patterson, 30 Ala. App. 492, 495, 8 So.2d 213, 216 (1942), where the following was said:
 [U]sury, having once tainted the contract, continues to pervade the transaction throughout. And this regardless of renewals or the change in form of the debt, so long as the original usurious obligation continues to exist, based upon a consideration in which usury inheres. . . .
Basing its argument upon this proposition, plaintiffs argue the "forgiving" or the 12% rate was ineffective, and that the purported usurious taint pervaded the renewal note.
We cannot agree. The above rule, which is most often found in cases where the creditor engaged in oppressive and devious behavior in order to cover its tracks, is not followed without exception.
Thus, in Masterson v. Grubbs, 70 Ala. 406 (1881), where there was an original note tainted by usury, but no interest was paid thereon, and the plaintiff sued on a nonusurious renewal note, the court held the defense of usury was not maintainable. After acknowledging the general rule that usury taints subsequent renewals of a note, the court said:
 The illegal taint can be purged, or eliminated, however, in either of two ways; first, by a renewal of the note or contract, after it has passed into the hands of a bona fide purchaser for value, without notice of the usury; secondly, by a reformation of the contract, by which the usurious interest is expunged by remitting the excess, and only lawful interest is retained or exacted. . . . 70 Ala. at 408. (Citations omitted. Emphasis supplied.)
Suffice it to say that under the facts at bar, where no interest or principal was paid on the allegedly usurious 12% note, the interest on that note was forgiven, and the renewal note was clearly at a lawful rate of interest, the purported usury was purged by the bank. We are not unmindful of McCormickv. Fallier, 223 Ala. 80, 134 So. 471 (1931). However, the emphasized portion of Masterson, supra, as quoted above, is not affected by the decision in McCormick v. Fallier and we apply and follow Masterson in the instant appeal.
 III
Having determined that the defendant was subject only to the federal penalty for any usury, which it voluntarily subjected itself to, and that the taint of usury was thereby purged, rendering the 8% renewal note valid and enforceable, we must now decide whether plaintiffs can nevertheless be proper class representatives.
We conclude they cannot. Plaintiffs are correct in asserting that the mere fact their claims have been adjudicated as being without merit does not in and of itself bar class representation. Roper v. Consurve, Inc., 578 F.2d 1106 (5th Cir. 1978). However, the plaintiffs still must be members of the class they purport to represent; that is, to be a class representative, plaintiffs cannot lack nexus with the class, and must have the same interest and have suffered the same injury as the purported class members. East Texas Motor FreightSystems, Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891,52 L.Ed.2d 453 (1977). Put another way, the plaintiffs must have suffered a legally cognizable injury in common with the class.Satterwhite v. City of Greenville, 578 F.2d 987 (5th Cir. 1978).
In both Rodriguez and Satterwhite, the plaintiff was found to lack nexus with the class each purported to represent for the reason that neither had suffered a legally cognizable injury.
The same can be said about plaintiffs at bar. None of the alleged usurious interest was ever extracted or paid, the defendant having voluntarily forgiven the interest on the prior note. Plaintiffs merely were required to pay the principal and legal interest from the date of renewal. In effect, they received the free use of over $78,000 for a period of three months. Thus, they cannot represent those who have "illegally" been charged an usurious rate of interest and have suffered a legally cognizable injury as a result. *Page 454 
This case is therefore distinguishable on the facts fromRoper v. Consurve, Inc., supra, upon which plaintiffs rely. There, the plaintiffs had been charged usurious interest ratesand had paid the usurious interest. After they filed suit, the defendant, over plaintiffs' objection, tendered the maximum amount each could recover individually. The Fifth Circuit Court of Appeals refused to countenance such an obvious attempt to short circuit a meritorious class action. There, the plaintiffs had clearly suffered a legally cognizable injury, and the fact their claims had been satisfied, whether willingly or not, did not deprive them of the necessary nexus with the class they purported to represent.
 IV
Finally, we must determine whether the foreclosure notice advertising the sale, and stating it would be held "between the legal hours of sale" was sufficient.
Section 35-10-8, Code of Ala. 1975, requires that the notice of such a sale "give the time, place and terms of said sale. . . ." Section 35-10-9 renders a sale contrary to the provisions of § 35-10-8 null and void.
Plaintiffs contend the "legal hours of sale" are undefined in Alabama, and conclude the notice in this case failed to sufficiently inform prospective bidders of the time of the sale.
Again, we must disagree. As defendant points out, § 6-8-41, Code of Ala. 1975, requires that all public sales shall be made between the hours of 11:00 A.M. and 4:00 P.M., allowing a sale once commenced to continue until 5:00 P.M. Thus, as a matter of law, public sales, such as the one held in the case at bar, must take place within a specific and narrow time frame, and, in light of this limitation we feel defendant's notice complied with § 35-10-8.
Although both parties have referred us to cases from other jurisdictions supportive of their respective positions, neither party has cited us to an Alabama case precisely on point, and our own research has been likewise unavailing. However, inGarst v. Johnson, 251 Ala. 291, 293, 37 So.2d 183, 184, 185
(1948), where the notice of sale specified it would be held "within the legal hours of sale," the supreme court commented:
 The proof does not sustain complainant's contention that the foreclosure sale was had without good and legal notice of the same in accordance with the powers contained in the mortgage.
We conclude that under the facts at bar the notice was sufficient. Plaintiffs have shown no prejudice due to the notice. The notice contained sufficient information to allow interested persons to contact the parties involved and acquire the exact hour of sale. Such a notice could in fact be of benefit to the debtor in that it allows a delay so that interested bidders might arrive. To require that a specific hour be named could spur litigation in those instances where for some unforeseen reason the sale was slightly delayed. See,Burr v. Borden, 61 Ill. 389 (1871).
Because of our resolution of the legal questions presented, there were no genuine issues of material fact left to be litigated. This conclusion applies to the plaintiffs' class claims as well as to their individual claims, for there is no need for further discovery or an evidentiary hearing pursuant to Rule 23, ARCP, when the uncontroverted facts affirmatively show that the plaintiff lacks the identity of interest required of a proper class representative. Amason v. First State Bank ofLineville, Ala., 369 So.2d 547 (1979). Therefore, summary judgment was proper.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., concurs.
BRADLEY, J., recuses himself. *Page 455